**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| LOCKHEED MARTIN CORPORATION,<br><br>                       Plaintiff,<br><br>     v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>                    Defendant. | Civil Action No. 8:24-cv-00579-TDC |
| CONTINENTAL CASUALTY COMPANY,<br><br>                       Plaintiff,<br><br>     v.<br><br>LOCKHEED MARTIN CORPORATION,<br><br>                    Defendant. | Civil Action No. 8:24-cv-02480-TDC |

<u>**DEFENDANT CONTINENTAL CASUALTY COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**</u>

Harry Lee
Bar No. 05232
Catherine D. Cockerham (admitted *pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 429-8112
Fax: (202) 429-3902
hlee@steptoe.com
ccockerham@steptoe.com

Eileen McCabe (admitted *pro hac vice*)
MENDES & MOUNT LLP
750 Seventh Ave.
New York, NY 10019
Tel: (212) 261-8000
Fax: (212) 261-8750
Eileen.mccabe@mendes.com

*Counsel for Defendant Continental Casualty Company*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

I.      The Clear and Unambiguous Policy Language ............................................. 3

II.     The Lawsuits ................................................................................................. 5

        A.      The Lawsuits Allege That Lockheed Used Toxic Chemicals and Polluted
                for Decades ....................................................................................... 5

        B.      Only Five Claimants Involved in the Lawsuits Potentially Allege Bodily
                Injury, Personal Injury, or Property Damage During Any Policy Periods .......... 6

III.    Continental's Denial of Coverage and this Coverage Action .......................... 7

LEGAL STANDARDS ............................................................................................ 8

I.      Rule 12(b)(1) Motion to Dismiss ................................................................. 9

II.     Rule 12(b)(6) Motion to Dismiss ................................................................. 9

ARGUMENT ........................................................................................................... 10

I.      A Choice of Law Analysis is Largely Unnecessary Here ............................. 10

II.     The Policies Must Be Enforced as Written ................................................... 10

III.    The Duty to Defend ....................................................................................... 11

IV.     Lockheed's Declaratory Judgment and Breach Claims Fail for Lack of Coverage ...... 12

        A.      There is No Potential for Coverage for Nearly All of the Purported Bodily-
                Injury Claimants Because They Did Not Potentially Suffer Bodily Injury
                or Personal Injury "During the Policy Period" ............................................. 12

                1.      The "During the Policy Period" Language Must Be Enforced ............. 12

                2.      The Vast Majority of the Purported Bodily-Injury Claims Cannot
                        Trigger Any Policy ........................................................................ 13

        B.      The Pollution Exclusion Bars Coverage Under the 1971-1977 Policies .......... 15

                1.      The Pollution Exclusion Unambiguously Applies to the Lawsuits ...... 15

                2.      The "Sudden and Accidental" Exception Does Not Apply .................. 16

        C.      The Policies Do Not Provide Coverage for Medical Monitoring Claims ......... 18

        D.      The Policies Do Not Provide Coverage for *Grayson*'s Homeowners Class ..... 19

                1.      The Class Does Not Allege Any "Property Damage" ......................... 19

                2.      Even if "Property Damage" Has Been Alleged, It is Alleged to
                        Have Occurred *After* the Policies Expired ..................................... 21

        E.      The 1963-1971 Policies Do Not Provide Coverage for *Henderson* Due to
                Lockheed's Late Notice ................................................................... 22

|   |   |   |
|---|---|---|
| 1. | New York Law Applies to the 1963-1971 Policies Under Both New York and Maryland Choice-of-Law Rules | 22 |
| 2. | Under Maryland Choice-of-Law Rules, New York Law Governs the 1963-1971 Policies | 23 |
| 3. | Under New York Choice-of-Law Rules, New York Law Governs the 1963-1971 Policies | 25 |
| 4. | Lockheed's 13-Month Delay in Providing Notice Vitiates Coverage | 26 |

| V. | Lockheed's Statutory Failure to Act in Good Faith Claim Must Be Dismissed | 28 |
|---|---|---|
| | A. Count 3 Should Be Dismissed for Lack of Subject-Matter Jurisdiction | 28 |
| | B. Count 3 Also Fails as a Matter of Law Under Rule 12(b)(6) | 29 |
| VI. | Lockheed's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 4) Fails as a Matter of Law | 29 |
| VII. | Lockheed's Claim for Attorneys' Fees (Count 5) Fails as a Matter of Law | 30 |
| CONCLUSION | | 30 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Gen. Star Indem. Co.*,
No. CIV. WDQ-11-1826, 2012 WL 764418 (D. Md. Mar. 6, 2012)................................11, 21

*Am. Equity Ins. Co. v. A & B Roofing, Inc.*,
106 A.D.3d 762 (N.Y. App. Div. 2013) ...............................................................................13

*Am. Home Assur. Co. v. Republic Ins. Co.*,
984 F.2d 76 (2d. Cir. 1993).................................................................................................27

*Am. Ins. Co. v. Fairchild Indus., Inc.*,
56 F.3d 435 (2d Cir. 1995)..................................................................................................26

*Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*,
338 Md. 560 (1995) .....................................................................................15, 16, 17, 24

*American Transit Ins. Co. v. Sartor*,
3 N.Y.3d 71 (N.Y. 2004) ...................................................................................................27

*Anderson v. F.D.I.C.*,
918 F.2d 1139 (4th Cir. 1990) ...........................................................................................23

*Angelina v. Cumberland FCI Health Serv.*,
No. GJH-15-2427, 2017 WL 1025720 (D. Md. Mar. 15, 2017)...........................................23

*Argo Corp v. Greater N.Y. Mut. Ins. Co.*,
827 N.E.2d 762 (N.Y. 2005)...............................................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................29

*Bao v. Liberty Mut. Fire Ins. Co.*,
535 F. Supp. 2d 532 (D. Md. 2008).....................................................................................16

*Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*,
330 Md. 758 (1993) ...........................................................................................................10

*Bedford Affil. v. Manheimer*,
86 F. Supp. 2d 67 (E.D.N.Y. 1999) ....................................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................9

*Bijan Designer For Men, Inc. v. Fireman's Fund Ins. Co.*,
264 A.D.2d 48 (N.Y. App. Div. 2000) .................................................................11

*Borg-Warner Corp. v. Ins. Co. of N. Am.*,
174 A.D.2d 24 (N.Y. App. Div. 1992) .................................................................17

*Bridge Metal Indus., LLC v. Travelers Indem. Co.*,
812 F. Supp. 2d 527 (S.D.N.Y. 2011), *aff'd*, 559 F. App'x 15 (2d Cir. 2014).......................21

*Briggs Ave. LLC v. Ins. Corp. of Hannover*,
11 N.Y.3d 377 (N.Y. 2008) .................................................................10, 26

*Broad St., LLC v. Gulf Ins. Co.*,
832 N.Y.S.2d 1 (N.Y. App. Div. 2006) .................................................................10

*Brown v. Erie Ins. Co.*,
207 A.D.3d 114 (N.Y. App. Div. 2022) .................................................................30

*Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.*,
126 F. Supp. 2d 596 (W.D.N.Y. 2001), *aff'd in part and rev'd in part on other grounds*, 302 F.3d 83 (2d Cir. 2002) .................................................................19

*Caronia v. Philip Morris USA, Inc.*,
5 N.E.3d 11 (N.Y. 2013).................................................................19

*Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*,
36 A.D.3d 17 (N.Y. App. Div. 2006), *aff'd*, 9 N.Y.3d 928 (N.Y. 2007)...............................25

*Chicago Ins. Co. v. Borsody*,
165 F.Supp.2d 592 (S.D.N.Y. 2001).................................................................27

*Chicago Ins. Co. v. Halcond*,
49 F. Supp. 2d 312 (S.D.N.Y. 1999).................................................................27

*Chubb Custom Ins. Co. v. Standard Fusee Corp.*,
2 N.E.3d 752 (Ind. Ct. App. 2014).................................................................15

*Connolly v. Lanham*,
685 F.Supp.3d 312 (D. Md. 2023).................................................................10

*Consol. Edison Co. v. Allstate Ins. Co.*,
774 N.E.2d 687 (N.Y. 2002).................................................................10

*Cont'l Cas Co. v. Rapid-Am. Corp.*,
80 N.Y.2d 640 (N.Y. 1993) .................................................................13

*Cruz v. W. Heritage Ins. Co.*,
145 A.D.3d 565 (N.Y. App. Div. 2016) .................................................................26

*Czach v. Intercontinental Hotels Grp. Res., LLC*,
    No. DLB-20-125, 2020 WL 6150961 (D. Md. Oct. 20, 2020)..............................................26

*David S. Brown Enters. Ltd. v. Affiliated FM Ins. Co.*,
    No. 21-1051, 2022 WL 61424 (4th Cir. Jan. 6, 2022)..............................................23

*Davis & Partners, LLC v. QBE Ins. Corp.*,
    113 A.D.3d 544 (N.Y. App. Div. 2014) ..............................................26

*Davis v. Thompson*,
    367 F.Supp.2d 792 (D. Md. 2005) ..............................................9

*Drachman v. Harvey*,
    453 F.2d 722 (2d Cir. 1971)..............................................26

*Epcon Homestead, LLC v. Town of Chapel Hill*,
    62 F.4th 882 (4th Cir. 2023) ..............................................9

*Essex Ins. Co. v. Cordillera Ranch Prop. Owners Ass'n*,
    No. SA-08-CA-605-OG, 2009 WL 10669892 (W.D. Tex. Oct. 15, 2009) ..............................................20

*Evans v. B.F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999) ..............................................9

*Francis v. Allstate Ins. Co.*,
    709 F.3d 362 (4th Cir. 2013) ..............................................24, 25

*Goodwin Bowler Assoc., Ltd. v. Eastern Mut. Ins. Co.*,
    687 N.Y.S.2d 126 (N.Y. App. Div 1999) ..............................................27

*Haas Tobacco Co. v. Am. Fidelity Co.*,
    226 N.Y. 343 (1919) ..............................................27

*Hanover Ins. Co. v. Weirfield Coal, Inc.*,
    474 F. Supp. 3d 564 (E.D.N.Y. 2020) ..............................................13

*Harbor E.-Off., LLC v. Travelers Cas. & Sur. Co.*,
    201 F.3d 436 (4th Cir. Aug. 30, 1999)..............................................21

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2002)..............................................30

*Hedvat v. Chubb Nat'l Ins. Co.*,
    No. 24-1194, 2024 WL 4615824 (2d Cir. Oct. 30, 2024)..............................................27

*Hoschar v. Appalachian Power Co.*,
    739 F.3d 163 (4th Cir. 2014) ..............................................25

*HPF LLC v. Gen. Star Indem. Co.*,
   788 N.E.2d 753 (Ill. App. Ct. 2003) ...................................................................19

*Indus. Enterp., Inc. v. Penn Am. Ins. Co.*,
   637 F.3d 481 (4th Cir. 2011) .............................................................................19

*Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd.*,
   843 F.3d 133 (4th Cir. 2016) .............................................................................24

*Jackson v. Standard Fire Ins. Co.*,
   No. 17-CV-1612-TDC, 2018 WL 348148 (D. Md. Jan. 9, 2018) ........................28

*JMP Assocs., Inc. v. St. Paul Fire & Marine Ins. Co.*,
   345 Md. 630 (1997) ..........................................................................................11

*Kahn v. Allstate Ins. Co.*,
   17 A.D.3d 408 (N.Y. App. Div. 2005) ...............................................................27

*Kendall v. Nationwide Ins. Co.*,
   348 Md. 157 (1997) ..........................................................................................11

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ...............................................................................9

*Kinsale Ins. Co. v. OBMP NY, LLC*,
   171 F. Supp. 3d 277 (S.D.N.Y. 2016) ...............................................................13

*Kraemer Bldg. Corp. v. Scottsdale Ins. Co.*,
   136 A.D.3d 1205 (N.Y. App. Div. 2016) ...........................................................27

*Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*,
   957 F.2d 1153 (4th Cir. 1992) ...........................................................................17

*In re Liquidation of Midland Ins. Co.*,
   16 N.Y.3d 536 (N.Y. 2011) ...............................................................................25

*Lowenstein Dyes & Cosmetics, Inc. v. Aetna Life & Cas. Co.*,
   524 F. Supp. 574 (E.D.N.Y. 1981) ....................................................................20

*M.Z. Discount Clothing Corp. v. Meyninger*,
   23 F.Supp.2d 270 (E.D.N.Y. 1998) ...................................................................27

*Maryland Cas. Co. v. Blackstone Int'l, Ltd.*,
   442 Md. 685 (2015) ..........................................................................................11

*Maxum Indem. Co. v. A One Testing Labs, Inc.*,
   150 F. Supp. 3d 278 (S.D.N.Y. 2015) ...............................................................13

*McLelland v. Travelers Personal Ins. Co.*,
   No. 1:24-cv-01509-JRR, 2024 WL 4644620 (D.Md. Oct. 30, 2024) .................................... 28

*Md. Cas. Co. v. W.R. Grace Co.*,
   23 F.3d 617 (2d Cir. 1993) ................................................................................................. 20

*Mesmer v. Md. Auto Ins. Fund*,
   353 Md. 241 (1999) ............................................................................................................ 30

*Mighty Midgets v. Centennial Ins. Co.*,
   389 N.E.2d 1080 (N.Y. 1979) ............................................................................................. 30

*Minasian v. IDS Prop. Cas. Ins. Co.*,
   No. 14-cv-10125(KBF), 2015 WL 8485257 (S.D.N.Y. 2015) ............................................. 27

*Mitchell, Best & Visnic, Inc. v. Travelers Prop. Cas. Corp.*,
   121 F. Supp. 2d 848 (D. Md. 2000), *aff'd*, 35 F. App'x 75 (4th Cir. 2002) ..................... 20, 21

*Mitchellville Plaza Bar LP v. Hanover Am. Ins. Co.*,
   No. 21-CV-106, 2022 WL 4465880 (D. Md. Sept. 26, 2022), *aff'd*, No. 22-
   2089, 2024 WL 208149 (4th Cir. Jan. 19, 2024) ................................................................. 24

*Mount Vernon Props., LLC v. Branch Banking & Tr. Co.*,
   170 Md. App. 457 (2006) .................................................................................................... 30

*NaturalLawn of Am. v. Erie Ins. Exchange*,
   No. JFM-06-0828, 2007 WL 2332315 (D. Md. Aug. 13, 2007) ..................................... 12, 19

*Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   89 N.Y.2d 621 (N.Y. 1997) ........................................................................................ 11, 16, 21

*Nucor Corp. v. Emps. Ins. Co. of Wausau*,
   296 P.3d 74 (Ariz. Ct. App. 2012) ...................................................................................... 20

*U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
   745 F.3d 131 (4th Cir. 2014) ........................................................................................... 9, 10

*Ogden Corp. v. Travelers Indem. Co.*,
   924 F.2d 39 (2d Cir. 1991) ............................................................................................. 12, 16

*Olin Corp. v. Ins. Co. of N. Am.*,
   743 F. Supp. 1044 (S.D.N.Y 1990), *aff'd*, 929 F.2d 62 (2d Cir. 1991) ............................... 26

*Olin Corp. v. Ins. Co. of N. Am.*,
   966 F.2d 718 (2d Cir. 1992) ........................................................................................... 27, 28

*Pa. Nat'l Mut. Cas. Ins. Co. v. Jeffers*,
   24 Md. App. 471 (2020) ...................................................................................................... 12

*Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts*,
   668 F.3d 106 (4th Cir. 2012) ...............................................................13

*Pa. Nat'l Mut. Cas. Ins. Co. v. Tate Andale, Inc.*,
   No. ADC-17-0670, 2018 WL 1881276 (D. Md. Apr. 19, 2018)...........................................29

*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015) ...............................................................23

*Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*,
   738 F.3d 95 (4th Cir. 2013) ...........................................................10, 23

*Pier 59 Studios L.P. v. Chelsea Piers L.P.*,
   811 N.Y.S.2d 24 (N.Y. App. Div. 2006) .........................................................30

*Polcom USA, LLC v. Affiliated FM Ins. Co.*,
   551 F.Supp.3d 290 (S.D.N.Y. 2021)...............................................................30

*Powers Chemco., Inc. v. Federal Ins. Co.*,
   74 N.Y.2d 910 (N.Y. 1989) ...............................................................15

*Redding-Hunter, Inc. v. Aetna Cas. & Sur. Co.*,
   206 A.D.2d 805 (N.Y. App. Div. 1994) .........................................................17

*RLI Ins. Co. v. AST Eng'g Corp.*,
   No. 20-214-CV, 2022 WL 107599 (2d Cir. Jan. 12, 2022) .........................................25

*Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of
   Pittsburgh, Pa.*,
   991 N.E.2d 666 (N.Y. 2013)...........................................................11, 13

*Ross Dev. Corp. v. PCS Nitrogen Inc.*,
   526 F. App'x 299 (4th Cir. 2013) .........................................................17

*Rossello v. Zurich Am. Ins. Co.*,
   468 Md. 92 (2020) ...............................................................12

*Rushing v. Commercial Cas. Ins. Co.*,
   167 N.E. 450 (N.Y. 1929)...............................................................27

*Safer v. Gov't Emps. Ins. Co.*,
   678 N.Y.S.2d 667 (N.Y. App. Div. 1998) .........................................................27

*Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*,
   377 F.3d 408 (4th Cir. 2004) ...............................................................22

*Sec. Mut. Ins. Co. v. Acker–Fitzsimons Corp.*,
   31 N.Y.2d 436 (N.Y. 1972) ...............................................................26

*Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*,
   30 F. Supp. 3d 166 (E.D.N.Y. 2014) ...................................................................30

*St. Paul & Marine Ins. Co. v. Pyreski*,
   292 Md. 187 (1981) .............................................................................................11

*St. Paul Fire & Marine Ins. Co. v. Getty Props. Corp.*,
   213 N.Y.S.3d 185 (N.Y App. Div. 2024) ...........................................................16

*St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*,
   819 F.3d 728 (4th Cir. 2016) .......................................................................10, 29

*State v. Ludlow's Sanitary Landfill Inc.*,
   50 F. Supp.2d 135 (N.D.N.Y. 1999)..................................................................27

*Sting Sec., Inc. v. First Mercury Syndicate, Inc.*,
   791 F. Supp. 555 (D. Md. 1992).........................................................................21

*Tate v. Am. Gen. Life Ins. Co.*,
   627 F. Supp.3d 480 (D. Md. 2022)......................................................................30

*Technicon Elecs. Corp. v. Am. Home Assur. Co.*,
   74 N.Y.2d 66 (N.Y. 1989) ...........................................................................11, 16

*Tonoga, Inc. v. New Hampshire Ins. Co.*,
   201 A.D.3d 1091 (N.Y App. Div. 2022) ...........................................................16

*Transamerica Ins. Co. v. Doe*,
   840 P.2d 288 (Ariz. Ct. App. 1992).....................................................................18

*Twin City Fire Ins. Co. v. AXIS Ins. Co.*,
   No. 22-00769-BAH, 2024 WL 3691891 (D. Md. Aug. 7, 2024) ..........................13

*Unitrin Auto & Home Ins. Co. v. Karp*,
   481 F. Supp. 3d 514 (D. Md. 2020)....................................................................28

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)............................................................................................23

*Velasco v. Gov't of Indonesia*,
   370 F.3d 392 (4th Cir. 2004) ...............................................................................9

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
   386 F.3d 581 (4th Cir. 2004) .............................................................................23

*W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*,
   814 F.3d 171 (4th Cir. 2016) .............................................................................24

*W.M. Schlosser Co., Inc. v. Ins. Co. of N. Am.*,
   325 Md. 301 (1992) ...................................................................................19

*Wilson Works, Inc. v. Great Am. Ins. Grp.*
   595 F. App'x 378, 381 (4th Cir. 2012) ...................................................13

*Worth Constr. Co., Inc. v. Admiral Ins. Co.*,
   10 N.Y.3d 411 (N.Y. 2008) ...................................................................11

**Statutes**

28 U.S.C. § 1404 ...............................................................................................23

Fl. Stat. Ann. § 95.11 .......................................................................................22

Md. Code Ann., Courts & Judicial Procedure § 3-1701 .........................28, 29

Md. Code. Ann., Insurance § 27-1001 ...........................................................28

**Rules**

Fed. R. Civ. Evid. 201 .......................................................................................10

Fed. R. Civ. P. 12 .......................................................................................1,  9, 29

Pursuant to Federal Rule of Civil Procedure 12(b) and other authorities discussed herein, Defendant Continental Casualty Company ("Continental") moves to dismiss with prejudice the Amended Complaint of Plaintiff Lockheed Martin Corporation ("Lockheed") (ECF 63).

## **INTRODUCTION**

This case concerns the rights and obligations of Continental and Lockheed regarding twelve primary insurance policies in effect between 1956 and 1977 (individually, "Policy," and collectively, "Policies"). Having previously alleged that Continental owes coverage for seven underlying tort lawsuits that relate to Lockheed's alleged decades-long, routine discharge of pollution from its Florida manufacturing facility, Lockheed's Amended Complaint now claims coverage for just three suits: the "*Henderson*," "*Grayson*," and "*Oliver*" actions ("Lawsuits").

Continental does not owe coverage for the Lawsuits; accordingly, Lockheed's claim for a declaration of coverage (Count 1) and its breach of contract claim (Count 2) fail as a matter of law. First, each Policy provides a defense *only* if a Lawsuit alleges that "bodily injury," "personal injury," or "property damage" occurred "during the policy period" of that Policy. The *Grayson* claimants (and a few *Henderson* claimants), however, do not allege "bodily injury" or "personal injury" (which, collectively, are generally defined by the Policies as bodily injury, sickness or disease) or "property damage" (generally defined as injury to or destruction of tangible property, including loss of use). They instead allege diminution in property value (*Grayson*'s purported "Homeowners Class") or a need for medical monitoring (*Grayson*'s purported "Medical Monitoring Class" and a few *Henderson* claimants).

Second, to the extent Lawsuit claimants allege any actual bodily injury, personal injury, or property damage, the overwhelming majority do not allege that any such injury or damage occurred "during the policy period" of any Policy, with the possible exception of 4 of 67 *Henderson* claimants (who allege possible first exposure in 1963 or 1970, but 2 of the 4 allege

only a need for medical monitoring, which is not covered) and the *Oliver* claimant (who alleges possible first exposure in 1972). Since no claimant alleges exposure to Lockheed's pollution prior to 1963, the first seven Policies (1/1/56 - 1/1/63) cannot possibly provide coverage for any Lawsuit.

Nor does coverage exist under the remaining five Policies, effective from 1963 to 1977. Starting with the last two policies (7/1/71 - 7/1/77), they contain an exclusion (the "Pollution Exclusion") that precludes coverage for losses "arising from" the discharge of pollutants, unless such discharge was both "sudden" and "accidental." Any bodily injury and property damage referenced in the Lawsuits allegedly arose from Lockheed's regular discharge of pollutants into the environment as part of its routine business operations over decades; no "sudden" or "accidental" discharge is alleged. Thus, the Pollution Exclusion bars coverage for each Lawsuit under the 1971-1977 Policies. This means that the Pollution Exclusion bars coverage for the *Oliver* Lawsuit (as Oliver's first alleged exposure was in 1972), and bars coverage under the 1971-1977 Policies for the remaining *Henderson* claimants to the extent injury occurred in those years.

Once the above issues are resolved, the only Policies potentially implicated by any Lawsuit are the 1963-1971 Policies, and the only potentially covered claims are the two *Henderson* claimants who allege potential first exposure to Lockheed's pollution in 1963 or 1970 (as the other two *Henderson* claimants who allege first exposure in 1970 seek only medical monitoring). But the 1963-1971 Policies do not cover *Henderson*. Lockheed waited approximately 13 months to notify Continental of this Lawsuit, violating the clear contractual requirement that it "immediately" forward suits, and thus vitiating coverage for the *Henderson* Lawsuit. Continental, thus, owes no coverage for any Lawsuit, and Counts 1 and 2 fail as a matter of law.

Count 3, alleging a statutory failure to act in good faith, fails for lack of subject-matter jurisdiction, since Lockheed did not exhaust its administrative remedies. Count 3 also fails under

Rule 12(b)(6) because (i) Maryland's good-faith statute does not apply to the only Policies that could be triggered here (the 1963-1977 Policies), as they were sold and delivered outside of Maryland, and (ii) no coverage exists under any Policy in any event, a pre-requisite for a statutory failure to act in good faith claim. Count 4 must be dismissed because an independent claim for breach of the implied duty of good faith and fair dealing does not exist. Count 5, for attorneys' fees, fails due to the lack of coverage and because it is not an independent cause of action.

The Court should grant this Motion and dismiss the Amended Complaint with prejudice.

## STATEMENT OF FACTS

I.    **The Clear and Unambiguous Policy Language**

Lockheed alleges that its predecessors, Glenn L. Martin Company and Martin Marietta Corporation, purchased twelve general liability insurance policies from Continental as follows:

| | POLICY NO. | PERIOD | | POLICY NO. | PERIOD |
|---|---|---|---|---|---|
| 1.) | CL 2688472R | 1/1/1956-4/1/1957 | 7.) | LAA 4302892R | 1/1/1962-1/1/1963 |
| 2.) | CL 2694977R | 4/1/1957-4/1/1958 | 8.) | LAA 6250002R | 1/1/1963-6/30/1965 |
| 3.) | CL 2693660R | 4/1/1958-4/1/1959 | 9.) | LAA 6250032 | 7/1/1965-7/1/1968 |
| 4.) | CL 2693500R | 4/1/1959-4/1/1960 | 10.) | LAA 7251730 | 7/1/1968-7/1/1971 |
| 5.) | CL 4305260R | 4/1/1960-4/1/1961 | 11.) | LAA 7251733 | 7/1/1971-7/1/1974 |
| 6.) | LAA 4292334R | 4/1/1961-1/1/1962 | 12.) | LAA 7251736 | 7/1/1974-7/1/1977 |

("Policies"). *See* ECF 63, ¶¶ 11, 11 n.7. Lockheed purports to attach "true and correct" copies of the Policies as exhibits to its Amended Complaint. *Id.* ¶ 11*;* ECF 1-3 – 1-14. Lockheed alleges the Policies provide annual aggregate limits of liability of $500,000 to $1,000,000. ECF 63 ¶ 14.

Subject to their terms, including exclusions, each Policy generally obligates Continental to defend and indemnify Lockheed's predecessor for losses it is legally obligated to pay as damages because of bodily injury, personal injury, or property damage that occurs "during the policy period" caused by an occurrence as defined in the Policy. ECF 63, ¶¶ 16-17, 20-21, 27, 31, 33. With slight wording variations, the Policies generally define "occurrence" as follows:

> an event, or continuous or repeated exposure to conditions, which unexpectedly causes personal injury or property damage **during the policy period.** All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence. ….

*Id.* ¶ 30 (emphasis added); *see also id.* ¶¶ 18, 25, 30, 36; *see also, e.g.,* ECF 1-12 at 9.

Most of the Policies define or describe "bodily injury" or "personal injury" in relevant part as "bodily injury, sickness or disease, including death at any time resulting therefrom." ECF 63 ¶¶ 16, 22, 28. The 1974-1977 Policy defines "bodily injury" as "bodily injury, mental injury, mental anguish, psychic damage, shock, sickness, disease or disability, sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* ¶ 34.

The Policies define or describe "property damage" as "injury to or destruction of property, including loss of use thereof" (1/1/56 – 1/1/63), *see, e.g.,* ECF 1-3 at 3; ECF 1-9 at 7; "injury to or destruction of tangible property, including loss of use thereof" (1/1/63 – 7/1/74), *see* ECF 1-10 at 10; ECF 63 ¶ 29; and "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom" or (2) "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence" (7/1/74 – 7/1/77), ECF 63 ¶ 35.

Continental has a duty to defend suits seeking to impose liability upon Lockheed, but only if the liability is covered by the Policies. They provide in the same or similar language:

> Continental shall defend any suit against the insured alleging such bodily injury, personal injury, …or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations are groundless, false or fraudulent….

*E.g.* ECF 1-9 at 4; *see also* ECF 63, Am. Compl. ¶¶ 17, 22, 31, 33.

Two of the Policies, Nos. LAA 7251733 and LAA 7251736 (the "1971-1977 Policies") include a Pollution Exclusion, that is the same or similar to the following:

This insurance does not apply:  To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See* ECF 1-14 at 15; ECF 1-13 at 36.

Each of the Policies contains conditions requiring prompt notice similar to the following:

NOTICE OF CLAIM OR SUIT
If claim is made or suit is brought against the insured, the insured shall **immediately** forward to the company every demand, notice, summons or other process received by him or representatives.

NOTICE OF OCCURRENCE
Written notice of any occurrence shall be given by or on behalf of the insured to the Company or … its authorized agents **as soon as practicable**.  Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses.

*See, e.g.,* ECF 1-11, Policy LAA 6250032 at 12 (emphasis added).

II.    **The Lawsuits**

Lockheed is, or was, a defendant in three lawsuits in the Middle District of Florida in which claimants seek relief for alleged harms caused by hazardous substances discharged as part of Lockheed's routine operations:  (1) *Henderson et al. v. Lockheed Martin Corp.*, *et al.*, Case No. 6-21-cv- 01363-RBD-DCI; (2) *Oliver v. Lockheed Martin Corp.*, No. 6:23-cv-2291-CEM-DCI; and (3) *Grayson v. Lockheed Martin Corp.*, No. 6:20-cv-01770-RBD-DCI (which suit was dismissed with prejudice on December 6, 2022, Ex. 11, at J.R.541).  ECF 63, ¶¶ 2, 40-41.

A.    **The Lawsuits Allege That Lockheed Used Toxic Chemicals and Polluted for Decades**

In the late 1950s, Lockheed's corporate predecessor, Glenn Martin Company ("GMC"), began operating a weapons manufacturing facility in Orlando, Florida ("Facility").  *Id.* ¶ 38.  In 1961, GMC became Martin Marietta Corporation, which became Lockheed in 1994 via merger.

*Id.* Lockheed (including predecessors) used the Facility to manufacture weapons. *Id.* ¶ 39.

The Lawsuits allege that as part of its routine business operations, Lockheed mismanaged and discharged into the soil, groundwater, and air various manufacturing by-products known to be hazardous to human health and the environment, including, *e.g.,* trichloroethylene ("TCE") and tetrachloroethylene ("PCE"). Exs. 1-3, J.R.1-J.R.332. Lockheed allegedly polluted for "decades," from the late 1950s to the present. *E.g.,* Ex. 1, ¶¶ 2, 108, J.R.4-5, J.R.29.[1] At the Facility, Lockheed allegedly "stored toxins in leaking storage tanks, collected and transported waste materials in leaking underground piping systems, … dumped thousands of tons of highly toxic waste sludges into trenches," and "dump[ed] toxic sludge in ponds." *Id.* ¶¶ 3, 165, J.R.5, J.R.60. Lockheed's operations routinely discharged "hazardous air pollutants." *Id.* ¶ 180, J.R.63. It allegedly used equipment to remove contaminants from soil and groundwater but then released the contaminants into the air in gaseous form. *Id.* ¶¶176-179, 186, J.R.62, J.R.65. Lockheed's contaminants allegedly moved offsite via groundwater migration, and air and wind, including after contaminants in the soil and groundwater "off-gassed." *E.g., id.*, ¶¶ 9, 168-191, J.R.6, J.R.60-66.

### B.    Only Five Claimants Involved in the Lawsuits Potentially Allege Bodily Injury, Personal Injury, or Property Damage During Any Policy Periods

The *Henderson* and *Oliver* plaintiffs lived or worked near the Facility and allegedly inhaled, ingested, or dermally contacted contaminated soils, groundwater, or air from the Facility. Ex. 1, ¶ 345, J.R.102; Ex. 3, ¶ 111, J.R.313. This exposure allegedly caused bodily injury, including cancers and birth defects, loss of consortium, or (for some *Henderson* claimants), a need for medical monitoring. Ex. 1, ¶¶ 192-268, 340-433, J.R.67-86; Ex. 3, ¶¶ 114-120, J.R.314-15.

Nearly all *Henderson* claimants allege first exposure to Lockheed's pollution after the last

---

[1] While Continental uses *Henderson* as an example, the Lawsuits were filed by the same plaintiffs' firm and describe Lockheed's polluting activity in similar terms.

Policy expired in 1977. Namely, 63 of the original 67 *Henderson* claimants allege first exposure to Lockheed's pollutants after 1977. Ex. 1, ¶¶ 196-198, 201-206, 209-267, J.R.67-86. As for the remaining four *Henderson* claimants, Marie Outing alleges exposure when living near the Facility between 1963 and 2019. *Id.* ¶ 200, J.R.69. The other three allege first exposure to Lockheed's pollution in 1970. *Id.* ¶ 199, J.R.68 (Ms. Reese exposed between 1970 and 1992), ¶¶ 207, 208, J.R.70-71 (Mr. Reynolds and Ms. Jackson exposed between 1970 and 1973).[2] In *Oliver*, the claimant alleges exposure to Lockheed's pollution between 1972 and 1989. Ex. 3, ¶ 118, J.R.315.

In *Grayson,* two plaintiffs sued Lockheed on behalf of themselves and two proposed classes. The "Medical Monitoring Class" alleges exposure to Lockheed's toxic wastes when living or working near the Facility at times "between January 1, 1985 and the present," *i.e., many years* after the last Policy expired; they claim that this post-1985 exposure poses a "present increased risk" to health that requires medical monitoring. Ex. 2, ¶¶ 84-113, 154, 161, J.R.206-213, J.R.242, J.R.245. The "Homeowners Class," defined as "owners, as of September 28, 2020, of residential properties located within 1.75 miles" of the Facility, allege diminution in property value as of that date and the consequent "loss of use and enjoyment" of their property. *Id.* ¶¶ 155, 162, J.R 242, J.R.245. Namely, the Class alleges that Lockheed's pollution has only recently "come to light and caused public fear," allegedly causing decreased home values. *Id.* ¶¶ 110-112, J.R.212, J.R.242.

III.    **Continental's Denial of Coverage and this Coverage Action**

Although filed in 2020 and 2021, respectively, Lockheed did not notify Continental of *Henderson* and *Grayson* until August 18, 2022. ECF 63 ¶¶ 41, 43. By contrast, Lockheed provided notice of *Oliver* on December 1, 2023, shortly after that Lawsuit was filed. *Id.* Via a

---

[2] Jackson and Reese seek medical monitoring and do not allege bodily injury. *Id.* ¶¶ 199, 207, J.R.68, J.R.70. Further, Jackson's and Reynolds's claims were dismissed on October 25, 2022 for failure to provide fact sheets. Ex. 12, J.R.543-45.

December 12, 2022 letter, Continental agreed to provide a defense to Lockheed for *Henderson* and *Grayson* under the Policies under a full reservation of rights. *Id.* ¶ 44; Ex. 4, J.R.333-39. Continental disclaimed coverage for the Lawsuits on December 22, 2023. ECF 63 ¶¶ 44, 48. However, despite its position that coverage is not owed for *Henderson* or *Grayson*, and specifically without waiving any of its rights, Continental agreed to pay as an accommodation to Lockheed its pro rata share of reasonable defense costs for *Grayson* (through its dismissal in December 2022) and *Henderson* pending court confirmation that it owes no coverage for these Lawsuits. *Id.* ¶ 48 (incorporating letter into Amended Complaint); Ex. 5 (letter) at J.R.351-354.[3]

After filing this suit on February 26, 2024, Lockheed amended its complaint on March 28, 2025, which *abandoned its claim for coverage for four suits* but continued to demand coverage for the three Lawsuits at issue here. ECF 63. Lockheed's Amended Complaint purports to state five causes of action: (1) declaratory judgment seeking declarations that Continental must defend and indemnify it against the Lawsuits and pay future defense costs (Count 1) (*id.* ¶¶53-56); (2) breach of contract for Continental's alleged failure to defend Lockheed fully in the Lawsuits or reimburse its defense costs for the Lawsuits (Count 2) (*id.* ¶¶ 57-62); (3) statutory failure to act in good faith under Maryland Code § 3-1701, based on Continental's alleged failure to properly investigate Lockheed's claim and denial of coverage (Count 3) (*id.* ¶¶ 63-69); (4) breach of the implied covenant of good faith and fair dealing, based on Continental's alleged failure to properly investigate Lockheed's claim and denial of coverage (Count 4) (*id.* ¶¶70-75); and (5) a request for its attorneys' fees in this action and the SDNY Action (Count 5) (*id.* ¶¶76-80).

## LEGAL STANDARDS

---

[3] On December 22, 2023, Continental also filed a declaratory judgment action against Lockheed in New York, seeking, *inter alia*, a declaration that it has no duty to defend to indemnify Lockheed under the Policies for the Lawsuits ("SDNY Action"). The SDNY Action was later transferred to this Court, and consolidated with this action. ECF 60. The SDNY Action currently is stayed. *Id.*

I.      **Rule 12(b)(1) Motion to Dismiss**

The plaintiff must establish subject matter jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  Subject matter jurisdiction is subject to a facial challenge, where a complaint's allegations are insufficient to establish jurisdiction, or a factual challenge, where a complaint's jurisdictional allegations "are not true."  *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).  Upon a facial challenge, a motion to dismiss should be granted "where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005) (citation omitted).  As under Rule 12(b)(6), courts accept well-pleaded factual allegations as true, but do not accept legal conclusions.  *Kerns*, 585 F.3d at 192. Upon a factual challenge, courts may "decide disputed issues of fact with respect to subject matter jurisdiction," and "the presumption of truthfulness normally accorded a complaint's allegations does not apply."  *Id.*  Courts "may regard the pleadings as mere evidence on the issue" and "consider evidence outside the pleadings."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).  As shown below, Lockheed's Count 3 does not survive a factual or facial challenge.

II.     **Rule 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" is subject to dismissal.  Fed. R. Civ. P. 12(b)(6).  Dismissal is proper "if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding 'unwarranted inferences, unreasonable conclusions, or arguments' fail to state a plausible claim for relief." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (citations omitted).  Courts must accept factual allegations as true, but not legal conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading with "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id.*  On a 12(b)(6) motion, a court may consider the complaint, documents attached to or incorporated therein, and documents

9

attached to a motion to dismiss that are integral to the complaint and authentic. *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). A court also may take judicial notice of matters of public record, including, *e.g.*, court filings. *Id.*; *Connolly v. Lanham*, 685 F.Supp.3d 312, 322 (D. Md. 2023); Fed. R. Civ. Evid. 201.

## ARGUMENT

### I.      A Choice of Law Analysis is Largely Unnecessary Here

A choice of law analysis is necessary "only if the relevant laws of the different states lead to different outcomes"; if not, the forum state's law governs. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100–01 (4th Cir. 2013). Lockheed has claimed Maryland law governs the Policies' construction (ECF 36 at 19), but as Continental has noted before, New York law applies to *the only* Policies that the Lawsuits could possibly trigger, ECF 37 at 9-10. For this Motion, a choice-of-law analysis is needed only to resolve Continental's "late notice" defense for *Henderson* under three Policies: LAA 6250002R, LAA 6250032, and LAA 7251730 (the "1963-1971 Policies"), because the outcome of other issues in this Motion is identical under both states' laws.[4] Continental's analysis of the law applicable to the 1963-1971 Policies is below in § IV.E.

### II.     The Policies Must Be Enforced as Written

Under Maryland and New York law, a court must enforce an insurance policy as written. *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 778 (1993); *Consol. Edison Co. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002). "Unless there is an indication that the parties intended to use words in the policy in a technical sense," they are accorded their "usual, ordinary, and accepted meaning." *Bausch & Lomb*, 330 Md. at 779; *Broad St., LLC v. Gulf Ins. Co.*, 832

---

[4] Under New York law, an insurer may disclaim coverage for late notice regardless of prejudice. *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 381 (N.Y. 2008). In Maryland, an insurer must show prejudice from the delay. *St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*, 819 F.3d 728, 736 (4th Cir. 2016). Continental reserves all rights.

N.Y.S.2d 1, 4 (N.Y. App. Div. 2006). When interpreting an insurance policy, courts construe it as a whole to determine the parties' intent. *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 168 (1997); *Bijan Designer For Men, Inc. v. Fireman's Fund Ins. Co.*, 264 A.D.2d 48, 51 (N.Y. App. Div. 2000). Courts must construe a policy in a way that "affords a fair meaning" to all policy language and "leaves no provision without force and effect." *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 991 N.E.2d 666, 671-72 (N.Y. 2013) (citation omitted); *JMP Assocs., Inc. v. St. Paul Fire & Marine Ins. Co*., 345 Md. 630, 63-36 (1997).

III.    **The Duty to Defend**

Under Maryland and New York law, an insurer has a duty to defend its insured under a liability policy when its insured is sued on a claim that is covered, or potentially covered, by the policy. *Maryland Cas. Co. v. Blackstone Int'l, Ltd.*, 442 Md. 685, 695 (2015); *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 415 (N.Y. 2008). The duty-to-defend analysis is a two-part inquiry: "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? [and] (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?" *Blackstone Int'l*, 442 Md. at 696 (quoting *St. Paul & Marine Ins. Co. v. Pyreski*, 292 Md. 187, 193 (1981)); *see also Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (N.Y. 1989) (the duty to defend is determined by comparing the complaint allegations with the policy terms; if the complaint "contains any facts or allegations which bring the claim even potentially within the protection purchased," there is a duty to defend). While the duty to defend is broad, a court should not stretch the words of an underlying complaint to find a duty to defend. *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 89 N.Y.2d 621, 634-35 (N.Y. 1997) ("In determining whether the underlying complaint can be read as even potentially bringing the claim within … coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is

11

linguistically conceivable but tortured and unreasonable."); *Allen v. Gen. Star Indem. Co.*, No. CIV. WDQ-11-1826, 2012 WL 764418, at \*6 (D. Md. Mar. 6, 2012) (in considering a duty to defend, courts give the underlying complaint "a reasonable construction," looking "beyond labels and conclusory averments" and to the claim's "substance" rather than label) (citations omitted).

Where, as here, an insurer does not have a duty to defend, it also has no duty to indemnify. *NaturalLawn of Am. v. Erie Ins. Exchange*, No. JFM-06-0828, 2007 WL 2332315, at \*2 (D. Md. Aug. 13, 2007); *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991).

IV.     **Lockheed's Declaratory Judgment and Breach Claims Fail for Lack of Coverage**

    A.     **There is No Potential for Coverage for Nearly All of the Purported Bodily-Injury Claimants Because They Did Not Potentially Suffer Bodily Injury or Personal Injury "During the Policy Period"**

        1.     **The "During the Policy Period" Language Must Be Enforced**

As noted, each Policy requires Continental to defend and indemnify Lockheed for damages because of bodily injury, personal injury, or property damage that occurs "during the policy period" and that is caused by an occurrence.  ECF 63 ¶¶ 27-37; *see also, e.g.,* ECF 1-12 at 5 (Continental will "pay on behalf of the insured … damages because of personal injury or property damage caused by an occurrence"); at 9 ("Occurrence means an event, or continuous or repeated exposure to conditions which unexpectedly causes personal injury or property damage during the policy period.").  In other words, coverage under any Policy cannot be triggered unless bodily injury, personal injury, or property damage occurs during *that particular* Policy's policy period.

Maryland and New York courts consistently hold that policy language limiting coverage to bodily injury, personal injury, or property damage that occurs "during the policy period" does not cover injury or damage that occurs outside the applicable policy period.  *See, e.g., Rossello v. Zurich Am. Ins. Co.,* 468 Md. 92, 119 (2020) (because policy limits coverage "to that which occurs 'during the policy period,'" the timing of injury dictates if a policy is triggered) (citation omitted);

*Pa. Nat'l Mut. Cas. Ins. Co. v. Jeffers*, 24 Md. App. 471, 492 (2020) (the "during the policy period" language means the insurer has no liability for bodily injury that occurs after end of policy period); *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 112 (4th Cir. 2012) (under Maryland law, language similar to that in the Policies clearly "does not cover damages [the insured] became legally obligated to pay for injuries that occurred outside of the policy period"); *Roman Catholic Diocese of Brooklyn,* 991 N.E.2d at 676 ("Plainly," coverage for bodily injury that "'occurs during the policy period' … is limited only to injury that occurs within the finite one-year coverage period of the policy"); *Cont'l Cas Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 650-652 (N.Y. 1993) (underlying suits potentially alleged "injury-in-fact" during policy period).

Continental therefore has no duty to defend under the Policies if, *inter alia*, the Lawsuits cannot reasonably be construed to allege the claimants suffered bodily injury, personal injury, or property damage during the relevant policy periods.  *Compare, e.g., Hanover Ins. Co. v. Weirfield Coal, Inc.*, 474 F. Supp. 3d 564, 570-71 (E.D.N.Y. 2020) (no duty to defend or indemnify where suit did not allege harm during policy period) *and Wilson Works, Inc. v. Great Am. Ins. Grp*. 595 F. App'x 378, 381 (4th Cir. 2012) (under West Virginia law, insurer had no duty to defend, as "alleged injuries did not occur within the policy period"), *with Twin City Fire Ins. Co. v. AXIS Ins. Co.*, No. 22-00769-BAH, 2024 WL 3691891, at *12 (D. Md. Aug. 7, 2024) (suit raised potential for coverage; claimants allegedly fell ill in January 2019, during 7/10/18 – 7/10/19 policy period).[5]

### 2.  The Vast Majority of the Purported Bodily-Injury Claims Cannot Trigger Any Policy

As discussed, the claimants in *Oliver*, *Henderson*, and the proposed Medical Monitoring

---

[5] *See also Kinsale Ins. Co. v. OBMP NY, LLC*, 171 F. Supp. 3d 277, 281 (S.D.N.Y. 2016) (no duty to defend; accident post-dated policy); *Maxum Indem. Co. v. A One Testing Labs, Inc.*, 150 F. Supp. 3d 278, 285-86 (S.D.N.Y. 2015) (no damage during policy period); *Am. Equity Ins. Co. v. A & B Roofing, Inc.*, 106 A.D.3d 762, 763 (N.Y. App. Div. 2013) (no coverage; injury pre-dated policy).

Class in *Grayson* ("Purported Bodily-Injury Claimants") allege that exposure to Lockheed's pollutants caused bodily injury or a need for medical monitoring. But none of these claimants alleges exposure to Lockheed's pollution "during the policy period" of any Policy, with the possible exception of the *Oliver* claimant (who alleges first exposure to Lockheed's pollution in 1972), and 4 of the 67 original *Henderson* claimants (who allege first exposure in 1963 or 1970).[6]

All other Purported-Bodily Injury Claimants allege exposure *after* the last Policy expired in 1977, meaning they did not potentially suffer bodily injury or personal injury while *any* Policy was in effect. Specifically, 63 of the original 67 *Henderson* claimants allege first exposure to Lockheed's pollutants after the last Policy expired in 1977. *E.g.,* Ex. 1, ¶¶ 196-198, J.R.67-68 (Mr. and Ms. Henderson allege first exposure in 1995); *see also id.* ¶¶ 201-206, 209-267, J.R.69-86. Similarly, in *Grayson*, the named plaintiffs and proposed "Medical Monitoring Class" were allegedly exposed to Lockheed's pollutants while living or working near the Facility "between January 1, 1985 and the present," *i.e., years* after 1977. Ex. 2, ¶¶ 154, 161, J.R.242, J.R.245. Thus, as an initial matter, this Court should grant Continental's motion to dismiss Lockheed's declaratory judgment and breach of contract claims concerning these 63 *Henderson* claimants and the *Grayson* Medical Monitoring Class, as the Policies provide no coverage for these claims as a matter of law.

Further, the remaining five claimants' claims cannot trigger most Policies. In fact, **none** of these claimants potentially triggers the first seven Policies (effective 1/1/56 – 1/1/63). In *Oliver,* the claimant alleges first exposure to Lockheed's pollution in 1972, so the 1956-1971 Policies cannot provide any coverage. Ex. 3, ¶ 118, J.R.315.[7] In *Henderson,* Marie Outing alleges first

---

[6] In addition to the claims asserted by the "Medical Monitoring Class," *Grayson* also includes claims by the purported "Homeowners Class." These claims, which do not allege bodily injury or property damage at all (much less "during the policy period"), are addressed below in § IV.D.

[7] And the Pollution Exclusion bars coverage for *Oliver* under the 1971-1977 Policies. *See* § IV.B.

exposure to Lockheed's pollution in 1963, so no Policy in effect prior to 1963 can possibly provide coverage. Ex. 1, ¶ 200, J.R.69. Claimants Reynolds, Jackson, and Reese allege first exposure in 1970, so there is no possible coverage for their claims under any Policies in effect prior to 1970.[8] *Id.* ¶¶ 199, 207, 208, J.R.68, J.R.70-71. The importance of these limitations is discussed below.

### B. The Pollution Exclusion Bars Coverage Under the 1971-1977 Policies

#### 1. The Pollution Exclusion Unambiguously Applies to the Lawsuits

The 1971-1977 Policies exclude any bodily injury or property damage "arising out of" the "discharge, dispersal, release, or escape" of "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants" into the land, air, or water, which is precisely the type of loss for which Lockheed seeks coverage. *E.g.,* ECF 1-14, at 15. As discussed, each Lawsuit seeks to hold Lockheed liable for its improper management and release of dangerous wastes and chemicals into the soil, groundwater, and air, which allegedly created an "environmental nightmare" and caused bodily injury, diminution in property value, and/or the need for medical monitoring. *Supra* at 5-7; *e.g.,* Ex. 1, ¶ 10, J.R.6.

Courts applying Maryland and New York law have repeatedly held that pollution exclusions similar to those in the 1971-1977 Policies unambiguously bar coverage for claims arising out of this type of alleged environmental pollution. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560 (1995) (pollution exclusion barred coverage for claims arising from discharge of hazardous chemicals into environment during manufacturing operations); *Chubb Custom Ins. Co. v. Standard Fusee Corp.*, 2 N.E.3d 752, 754 (Ind. Ct. App. 2014) (under Maryland law, pollution exclusion barred coverage for claims arising from contamination caused

---

[8] As discussed below, no coverage exists under any potentially triggered Policy for these *Henderson* claimants, as: 1) the Pollution Exclusion bars coverage under the 1971-1977 Policies (§ IV.B; 2) Jackson and Reese do not allege bodily injury; they seek medical monitoring (§ IV.C); and 3) the 1963-1971 Policies do not cover *Henderson* due to Lockheed's late notice (*see* § IV.E).

by perchlorate released into soil during operations); *Powers Chemco., Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 911 (N.Y. 1989) (pollution exclusion applied to claims arising out of discharge of hazardous wastes into the environment); *St. Paul Fire & Marine Ins. Co. v. Getty Props. Corp.*, 213 N.Y.S.3d 185, 190 (N.Y App. Div. 2024) (pollution exclusion barred coverage for claims arising out of release of MTBE, a fuel additive, into soil and groundwater); *Tonoga, Inc. v. New Hampshire Ins. Co.*, 201 A.D.3d 1091, 1097 (N.Y App. Div. 2022) (pollution exclusion barred defense and indemnity for claims arising out of discharge of PFOA and PFOS into environment).

## 2. The "Sudden and Accidental" Exception Does Not Apply

The Pollution Exclusion does not apply "if such discharge, dispersal, release or escape is sudden and accidental." *E.g.,* ECF 1-14 at 15.  Lockheed must prove this exception.  *Northville Indus.,* 89 N.Y.2d at 634; *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008).  If the discharge is not *both* sudden and accidental, the exception does not apply.  *ARTRA Grp.*, 338 Md. at 586; *Northville Indus.*, 89 N.Y.2d at 631.  The term "sudden" has a temporal aspect, meaning temporally abrupt or immediate.  *ARTRA Grp.,* 338 Md at 586-590; *Northville Indus.*, 89 N.Y.2d at 663 ("sudden" has a temporal component and only relates to a discharge that occurs "*abruptly, precipitantly or brought about in a short time*").  Courts consistently hold that discharges that occur over a period of time are, by definition, not "sudden." *ARTRA Grp.*, 338 Md at 591 (polluting activities over a "period of several years" not "sudden"); *Northville Indus.*, 89 N.Y.2d at 635 (petroleum leaks that occurred continuously over years were "the opposite" of sudden); *Getty Props. Corp.*, 213 N.Y.S.3d at 190 (pollution occurring "over many years" was not "sudden"); *Tonoga*, 201 A.D. at 1097 (dumping over "many years" not sudden).

A discharge is "accidental" if unintended.  *See ARTRA Grp.*, 338 Md. at 583; *Ogden*, 924 F.2d at 42; *Technicon Elecs.,* 74 N.Y.2d at 73 (deliberate discharge of pollutants into waterway not "accidental").  By definition, when an insured discharges pollutants as part of its routine

business operations, the discharge is not "accidental." *ARTRA Grp.*, 338 Md at 590; *Tonoga*, 201 A.D. at 1097 (insured's long-term discharge of pollutant was not accidental); *Borg-Warner Corp. v. Ins. Co. of N. Am.*, 174 A.D.2d 24, 43-44 (N.Y. App. Div. 1992) (insured's discharge of waste at landfills in regular course of business was not "accidental"); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1154 (4th Cir. 1992) (under New Jersey law, insured's dumping of sludge into landfill in the regular course of business was not "accidental").

The Maryland Court of Appeals' decision in *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560 (1995) is illustrative. In *ARTRA Group*, the underlying suit alleged the insured used hazardous substances in its operations at a paint manufacturing facility from 1946 to 1980. *Id.* at 592. During its regular operations, the insured allegedly stored hazardous substances in leaking drums and underground tanks, spilled hazardous substances, and discharged hazardous substances into drains, contaminating soil and groundwater. *Id.* at 590-91. The Court of Appeals ruled that the pollution exclusion barred a duty to defend. In holding the "sudden and accidental" exception did not apply, the Court agreed "with the numerous cases holding allegations of longstanding business activities resulting in pollution do not constitute allegations of 'sudden and accidental' pollution." *Id.* As noted, New York courts and the Fourth Circuit have ruled similarly. *Supra.*[9]

Here, the Lawsuits expressly allege harm arising out of Lockheed's regular discharge of pollutants into the environment as part of its routine business operations over decades, with no claims of "sudden" or "accidental" discharges. The Pollution Exclusion clearly applies, and Continental has no duty to defend (and owes no coverage for) any Lawsuit under the 1971-1977

---

[9] *See also Redding-Hunter, Inc. v. Aetna Cas. & Sur. Co.,* 206 A.D.2d 805, 807-08 (N.Y. App. Div. 1994) ("sudden and accidental" exception inapplicable for years-long polluting during normal operation); *Bedford Affil. v. Manheimer,* 86 F. Supp. 2d 67, 76 (E.D.N.Y. 1999) (same); *Ross Dev. Corp. v. PCS Nitrogen Inc.,* 526 F. App'x 299, 305 (4th Cir. 2013) (no duty to defend under South Carolina law where discharges allegedly occurred during insured's "ordinary course of business").

Policies. Hence, the Pollution Exclusion bars coverage for *Oliver* (because Oliver only alleges exposure starting in 1972)*,* and bars coverage for the four remaining *Henderson* claimants to the extent coverage is sought under the 1971-1977 Policies. (And if *Grayson* could implicate the 1971-1977 Policies, which Continental denies as discussed herein, the Pollution Exclusion also bars coverage under these Policies for *Grayson*.). Lockheed's declaratory judgment and breach of contract claims (Counts 1-2), thus, fail as a matter of law as to the 1971-1977 Policies.

### C.    The Policies Do Not Provide Coverage for Medical Monitoring Claims

As noted, the Policies cover "bodily injury" or "personal injury" caused by an "occurrence" during the policy period. Most Policies define or describe "bodily injury" or "personal injury" in relevant part as "bodily injury, sickness or disease, including death at any time resulting therefrom." ECF 63 ¶¶ 16, 22, 28.[10] Thus, an actual physical injury must occur during the policy period to trigger coverage; a purported "risk" of a future injury or illness does not suffice.

Of the handful of *Henderson* claimants who seek medical monitoring, only two (Jackson and Reese) allege exposure to Lockheed's pollutants during any Policy period. *Supra.* But these claims do not potentially trigger coverage, as they do not allege any resulting physical injury; they assert only a "present need" for diagnostic testing for early detection of *potential* disease. Ex. 1, ¶¶ 199, 207, J.R.68, J.R.70. And even if the *Grayson* Medical Monitoring Class alleges exposure "during the policy period" (it does not), there is no coverage; it only alleges a "present increased risk" of illness that it says requires medical monitoring. Ex. 2, ¶¶ 107, 161, J.R.211 J.R.245.

While caselaw is sparse, the best-reasoned cases have ruled that medical monitoring claims do not constitute "bodily injury," because insurance policies cover only actual physical injury, not

---

[10] The 1974-1977 Policy defines "bodily injury" as "bodily injury, mental injury, mental anguish, psychic damage, shock, sickness, disease or disability, sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* ¶ 34.

a risk of developing future illness. *Transamerica Ins. Co. v. Doe*, 840 P.2d 288, 291 (Ariz. Ct. App. 1992) (medical monitoring claim based on exposure to infected blood and risk of developing HIV did not allege bodily injury); *HPF LLC v. Gen. Star Indem. Co.*, 788 N.E.2d 753, 758 (Ill. App. Ct. 2003) (medical monitoring claim was "not an allegation" of a sustained "bodily injury").

Analogous Maryland and New York law also confirms that the Policies do not cover medical monitoring claims. Maryland law requires actual injury or damage to find coverage triggered. *W.M. Schlosser Co., Inc. v. Ins. Co. of N. Am.*, 325 Md. 301, 306-07 (1992) (rejecting insured's claim for reimbursement of costs incurred to avoid harming neighboring property); *Indus. Enterp., Inc. v. Penn Am. Ins. Co.*, 637 F.3d 481, 489 (4th Cir. 2011) (under Maryland law, coverage afforded for "tangible injury," not "injury prevention") (citation omitted). Similarly, under New York law, a claim of an "increased risk" for developing cancer is *not* a claim for "present physical injury." *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 14, 18 (N.Y. 2013).[11]

## D.    The Policies Do Not Provide Coverage for *Grayson*'s Homeowners Class

### 1.   The Class Does Not Allege Any "Property Damage"

#### a.   Diminution in Value is Not Property Damage

In *Grayson*, Ms. Grayson and the Homeowners Class assert that after they purchased homes near the Facility, information about Lockheed's polluting activity came to light and created public fear, causing a diminution of their property value. Ex. 2, ¶¶ 111-113, J.R.212-213. But as discussed, the Policies only provide coverage for "property damage" that occurs during the policy period. The Policies generally define or describe "property damage" as "injury to or destruction

---

[11] A New York federal district court ruled on an *Erie* basis that an underlying suit seeking medical monitoring plausibly alleged "bodily injury" by claiming that exposure to toxins placed claimants at a higher risk of developing cancer. *Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.*, 126 F. Supp. 2d 596, 638-40 (W.D.N.Y. 2001), *aff'd in part and rev'd in part on other grounds*, 302 F.3d 83 (2d Cir. 2002). But *Burt Rigid* pre-dates the Court of Appeal's *Caronia* decision.

of tangible property, including loss of use thereof." *E.g.,* ECF 63 ¶ 29.[12]  The alleged diminution in property value is an economic cost, which does not constitute "property damage" under the Policies.  *E.g., Md. Cas. Co. v. W.R. Grace Co.*, 23 F.3d 617, 627 (2d Cir. 1993) ("reduction in marketability serves as a measure of damages, but it does not constitute an injury to property"); *Lowenstein Dyes & Cosmetics, Inc. v. Aetna Life & Cas. Co.*, 524 F. Supp. 574, 577 (E.D.N.Y. 1981) (alleged lost profits due to ineffective products not "property damage"); *Mitchell, Best & Visnic, Inc. v. Travelers Prop. Cas. Corp.*, 121 F. Supp. 2d 848, 851-53 (D. Md. 2000) (economic losses from cleaning up land "to conform to a new covenant" not covered "property damage"), *aff'd*, 35 F. App'x 75 (4th Cir. 2002).  Indeed, courts nationwide have ruled that "property damage" does not include diminution of value due to alleged "stigma" from nearby contamination.  *E.g., Nucor Corp. v. Emps. Ins. Co. of Wausau*, 296 P.3d 74, 79-80 (Ariz. Ct. App. 2012) (no coverage for claims by homeowners living near contaminated plume); *Essex Ins. Co. v. Cordillera Ranch Prop. Owners Ass'n*, No. SA-08-CA-605-OG, 2009 WL 10669892, at *14-15 (W.D. Tex. Oct. 15, 2009) (no coverage for loss of value "due to stigma for plat and covenant violations").

**b.  Vague Allegations of "Loss of Use" Do Not Trigger Coverage**

While the Homeowners Class repeatedly complains of diminished property value, it also vaguely alleges in passing that recent public awareness of Lockheed's activity and resulting public fear has caused "loss of use and enjoyment" of property.  *E.g.,* Ex. 2, ¶¶ 219-220, J.R.257.  But to the extent "loss of use" constitutes "property damage" under the Policies, the Homeowners Class does not allege it experienced any "loss of use" within the meaning of any Policy.  Courts eschew

---

[12] The 1974-1977 Policy defines "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom", or (2) "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence."  *Id.* ¶ 35.

legal labels and look to the factual allegations to determine whether a duty to defend exists. *E.g. Northville Indus.,* 89 N.Y.2d. at 634 (courts should not "impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable."); *Allen,* 2012 WL 764418 at *6. Here, the *Grayson* complaint has no factual averments as to how, if at all, the Class members were prevented from using their property.

Further, residents' alleged fear of living near a Facility that allegedly emits wastes into the community does not constitute "loss of use." *See Mitchell,* 121 F. Supp. 2d at 853 (under Maryland law, loss of enjoyment from obstructed view is not property damage); *Harbor E.-Off., LLC v. Travelers Cas. & Sur. Co.*, 201 F.3d 436, at *3 (4th Cir. Aug. 30, 1999) (no "loss of use" under similar policy language where load-bearing piles remained in use despite not bearing expected weight); *Sting Sec., Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 562 (D. Md. 1992) (no "loss of use" where plaintiff allegedly could not use premises as efficiently due to defective security system installation); *Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2011) (no duty to defend; claimant could still use intellectual property and lost only exclusive use from trade secret misappropriation), *aff'd*, 559 F. App'x 15 (2d Cir. 2014).

## 2. Even if "Property Damage" Has Been Alleged, It is Alleged to Have Occurred *After* the Policies Expired

Even if the *Grayson* Homeowners Class potentially alleges "property damage" (it does not), no coverage is potentially triggered because any "property damage" did not occur "during" any Policy's policy period. *Supra* at 12-13. As noted above, the only allegations regarding potential "property damage" are limited to: (i) alleged diminution in current value and (ii) alleged current loss of use and enjoyment, both of which allegedly resulted from the very recent emergence of information regarding Lockheed's polluting activities at the Facility. There are no allegations that this information came to light or caused any "damage" before the last Policy expired in 1977.

To the contrary, the *Grayson* complaint confirms that information about Lockheed's activities emerged well after 1977. It describes Lockheed's polluting activities between 1958 and 1985 (Ex. 2, ¶¶ 35-47, J.R.176-179) and then alleges that Lockheed "concealed" its activities at the facility "for many years" and thus intentionally prevented "public awareness" (*id.* ¶ 110, J.R.212), confirming that the Policies, the last of which expired in 1977, cannot possibly be triggered. Further, the Homeowners Class is defined as all owners "as of September 28, 2020" of residential property within a certain radius of the Facility. *Id.* ¶ 155, J.R.242. This definition assumes that a property buyer on September 27, 2020 (one day before the Class cutoff) could recover for the same sort of diminution in value and loss of use as other class members, confirming public awareness emerged on September 28, 2020 or later (and *not* more than forty years ago). Moreover, the Class implicitly cannot claim any diminution in value or loss of use during the Policy dates, because it would be barred by limitations from suing based on information available prior to 1977. *See* Fl. Stat. Ann. § 95.11 (applying four-year limitation period to most actions).

### E.    The 1963-1971 Policies Do Not Provide Coverage for *Henderson* Due to Lockheed's Late Notice

As discussed, four *Henderson* claimants allege first exposure to Lockheed's waste in 1963 or 1970, prior to the 1971-1977 Policies with a Pollution Exclusion (but two of those claimants only allege the need for monitoring, *i.e.*, they do not allege any actual "bodily injury"). Due to Lockheed's untimely notice, however, the 1963-1971 Policies provide no coverage for *Henderson*. Below, Continental first addresses choice of law, then Lockheed's late notice of *Henderson*.

#### 1.    New York Law Applies to the 1963-1971 Policies Under Both New York and Maryland Choice-of-Law Rules

A federal court exercising diversity jurisdiction typically applies the choice of law rules of the state in which it sits. *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418-419 (4th Cir. 2004). Because Lockheed filed its complaint in this court, Maryland choice-of-law

rules would typically apply. But this is a consolidated action, with two substantially similar suits. ECF 60 at 2-3. Because Continental filed in the Southern District of New York, New York choice-of-law rules typically would apply to the SDNY Action. *Van Dusen v. Barrack*, 376 U.S. 612, 632-37 (1964); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 369 (4th Cir. 2015) ("transferor court's choice-of-law rules apply" to cases transferred under 28 U.S.C. § 1404(a)). In consolidated actions with similar claims, one state's choice-of-law rules usually apply to both suits. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.,* 386 F.3d 581, 600 (4th Cir. 2004). The Court need not decide between Maryland and New York choice-of-law rules, however, as New York law applies to the interpretation of the 1963-1971 Policies under either set of rules. *Id.*

### 2. Under Maryland Choice-of-Law Rules, New York Law Governs the 1963-1971 Policies

In the absence of a contractual choice of law provision, Maryland follows the doctrine of *lex loci contractus*, which applies the law of the jurisdiction where the contract was made. A contract is "made when the last act to complete it is performed," which is typically where the policy is delivered and the premiums are paid. *Perini/Tompkins Joint Venture*, 738 F.3d at 100.

Here, it is undisputed that the 1963-1971 Policies (the only potentially triggered Policies) were delivered in New York. *E.g.,* ECF 36-1, Vargo Aff. ¶ 6 ("the final five policies were executed in and delivered to Martin Marietta Corporation in New York, New York).[13] Indeed, each of the 1963-1971 Policies identifies a New York address for Martin Marietta Corporation at the time of policy issuance. ECF 1-10, at 6, ECF 1-11, at 3, ECF 1-12 at 4. New York law, thus, applies to the 1963-1971 Policies. *E.g., David S. Brown Enters. Ltd. v. Affiliated FM Ins. Co.*, No. 21-1051, 2022 WL 61424, at *2 (4th Cir. Jan. 6, 2022) (policy governed by the law of state where delivered);

---

[13] This court may take judicial notice of Lockheed's declaration. *Anderson v. F.D.I.C.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (notice of "own records"); *Angelina v. Cumberland FCI Health Serv.*, GJH-15-2427, 2017 WL 1025720, at *5 n.8 (D. Md. Mar. 15, 2017) (notice of declaration).

*Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd.*, 843 F.3d 133, 136 (4th Cir. 2016) (same);

*W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co*., 814 F.3d 171, 176 (4th Cir. 2016) (same).

Further, Maryland's "renvoi" doctrine does not apply to the 1963-1971 Policies.  Under this narrow exception to *lex loci contractus*, courts may apply Maryland law to contracts entered into in other states if:  "Maryland has the most significant relationship, or, at least, a substantial relationship … to the contract issue presented" ***and*** "the state where the contract was entered into would not apply its own substantive law, but instead would apply Maryland substantive law to the issue before the court."  *ARTRA Grp.*, 338 Md. at 579.  Neither prong applies here.

First, Maryland does not have a substantial relationship to the 1963-1971 Policies.  These Policies were made in New York (ECF 36-1 ¶ 6), the location of Lockheed's principal place of business during this time, *infra* at 25-26.  The events precipitating the Lawsuits occurred in Florida, where those Lawsuits are filed.  ECF 63 ¶¶ 38-42.  In *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 n.6 (4th Cir. 2013), the Fourth Circuit held Maryland did not have a significant relationship to the issue there—whether the insurer had a duty to defend—because the policy was "made in California."  *Id.* (also finding it insignificant that the events in underlying suit occurred, and suit was filed, in Maryland).  Here, Maryland has even ***less*** of a relationship with the contract issue (whether coverage exists under New York policies) than what was held insignificant in *Francis*.

Second, even if Lockheed could establish the first prong (it cannot), renvoi does not apply because, as discussed below, under New York's choice-of-law rules, a New York court would apply New York law (not Maryland law) to the 1963-1971 Policies.  *E.g., Mitchellville Plaza Bar LP v. Hanover Am. Ins. Co.*, No. 21-CV-106, 2022 WL 4465880, at *3-5 (D. Md. Sept. 26, 2022) (renvoi inapplicable, as policy was delivered in Pennsylvania, and Pennsylvania's choice of law rules would not apply Maryland law)*, aff'd,* No. 22-2089, 2024 WL 208149 (4th Cir. Jan. 19,

2024); *Francis*, 709 F.3d at 370 n.6 (finding renvoi inapplicable and applying California law).

### 3. Under New York Choice-of-Law Rules, New York Law Governs the 1963-1971 Policies

Under New York law, courts apply the "center of gravity" or "grouping of contacts" analysis to decide the law applicable to contracts, including insurance policies. *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 543 (N.Y. 2011). This analysis identifies the state with the "most significant relationship to the transaction and the parties." *Id.* (citation omitted). When policies cover risks in multiple states, as Lockheed agrees "is the case here" (ECF 36 at 15),[14] the insured's domicile **at the time of contracting** serves as a proxy for the principal location of the insured risk. *In re Midland*, 16 N.Y.3d at 544, 547. The insured's domicile is the state where its principal place of business is located at policy issuance. *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 25 (N.Y. App. Div. 2006), *aff'd*, 9 N.Y.3d 928 (N.Y. 2007). "The state of the insured's domicile is a fact known to the parties at the time of contracting, and… application of the law of that state is most likely to conform to their expectations." *Id.* at 23.

Martin Marietta Corporation's principal place of business was in New York when the 1963-1971 Policies were issued, as its management directed and controlled the company from its executive offices in New York. *E.g., Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170–74 (4th Cir. 2014) (under "nerve center" test, principal place of business was state where officers controlled and directed business activities). Per Martin Marietta's publicly-available 1961 annual report, "Corporate management located in New York City" exercised "close policy and financial controls over all activities" and "coordinated the three major corporate divisions." Ex. 6 ('61

---

[14] The 1963-1971 Policies confirm they cover risks in multiple states. *E.g.,* ECF 63 ¶ 15 ("Coverage Territory" includes "whole" USA); ECF 1-10 at 55-56 (noting premises in New York, Florida, and elsewhere), ECF 1-11 at 31-33 (same); ECF 1-12 at 25-28 (same); *RLI Ins. Co. v. AST Eng'g Corp.*, No. 20-214-CV, 2022 WL 107599, at *2 (2d Cir. Jan. 12, 2022) (law of New Jersey, the insured's domicile at contracting, applied; policy covered risks in "at least two states").

report) at J.R.362-63; *see Czach v. Intercontinental Hotels Grp. Res., LLC,* No. DLB-20-125*, 2020 WL 6150961, at \*10 n.7 (D. Md. Oct. 20, 2020) (taking judicial notice of party's annual report). Its executive offices remained in New York when the 1963-1971 Policies were issued. Ex. 7 ('63 report) at J.R.409, J.R.433; Ex. 8 ('65 report) at J.R.445, J.R.472; Ex. 9 ('68 report) at J.R.517, J.R.514. Indeed, in July 1971, the Second Circuit found Martin Marietta's "principal place of business" remained "in New York." *Drachman v. Harvey,* 453 F.2d 722, 724 (2d Cir. 1971).

In short, renvoi does not apply, and New York law applies to the construction of the 1963-1971 Policies under both Maryland and New York choice-of-law rules.

### 4. Lockheed's 13-Month Delay in Providing Notice Vitiates Coverage

The 1963-1971 Policies require as a condition of coverage that Lockheed "immediately" forward any suit papers to Continental, and provide Continental with written notice of any accident or occurrence "as soon as practicable." *E.g.*, ECF 1-11, at 12. New York courts interpret such provisions as requiring notice within an objectively-reasonable timeframe. *E.g. Olin Corp. v. Ins. Co. of N. Am.*, 743 F. Supp. 1044 (S.D.N.Y 1990), *aff'd*, 929 F.2d 62 (2d Cir. 1991); *Sec. Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (N.Y. 1972). An insured's failure to satisfy a notice requirement constitutes "a failure to comply with a condition precedent which, as a matter of law, vitiates the contract," and an insurer need not show prejudice.[15] *Argo Corp v. Greater N.Y. Mut. Ins. Co.*, 827 N.E.2d 762, 764 (N.Y. 2005)*; Briggs*, 11 N.Y.3d at 381.

In New York, delays in notice of "one or two months are routinely held 'unreasonable'" as a matter of law. *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995); *see also, e.g., Cruz v. W. Heritage Ins. Co.*, 145 A.D.3d 565, 566 (N.Y. App. Div. 2016) (2-month delay);

---

[15] While New York's common-law "no prejudice" rule has been abrogated by statute, the statute applies only to insurance policies issued since January 17, 2009, and thus is inapplicable here. *Davis & Partners, LLC v. QBE Ins. Corp.*, 113 A.D.3d 544, 545 (N.Y. App. Div. 2014).

*Goodwin Bowler Assoc., Ltd. v. Eastern Mut. Ins. Co.*, 687 N.Y.S.2d 126, 127 (N.Y. App. Div 1999) (2 months); *Safer v. Gov't Emps. Ins. Co.*, 678 N.Y.S.2d 667, 668 (N.Y. App. Div. 1998) (1.5 months); *Kahn v. Allstate Ins. Co.*, 17 A.D.3d 408, 409 (N.Y. App. Div. 2005) (67 days); *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d. Cir. 1993) (36 days) (collecting cases); *Chicago Ins. Co. v. Halcond*, 49 F. Supp. 2d 312, 320 (S.D.N.Y. 1999) (38 days); *cf., Hedvat v. Chubb Nat'l Ins. Co.*, No. 24-1194, 2024 WL 4615824, at *3 (2d Cir. Oct. 30, 2024) (3 months).

The Policies' condition requiring "immediate" notice of a suit is separate from and in addition to the condition requiring notice of an accident or occurrence "as soon as practicable." *See, e.g., American Transit Ins. Co. v. Sartor,* 3 N.Y.3d 71, 75 (N.Y. 2004); *Kraemer Bldg. Corp. v. Scottsdale Ins. Co.*, 136 A.D.3d 1205, 1206-07 (N.Y. App. Div. 2016). And for policies requiring "immediate" notice, courts hold "delays of less than one month [are] untimely as a matter of law." *Minasian v. IDS Prop. Cas. Ins. Co.*, No. 14-cv-10125(KBF), 2015 WL 8485257, at *6 (S.D.N.Y. 2015); *see also M.Z. Discount Clothing Corp. v. Meyninger*, 23 F.Supp.2d 270, 272 (E.D.N.Y. 1998) (more than 10-day delay not "immediate"); *Haas Tobacco Co. v. Am. Fidelity Co.,* 226 N.Y. 343, 345 (1919) (same); *Rushing v. Commercial Cas. Ins. Co.*, 167 N.E. 450, 451 (N.Y. 1929) (22-day delay); *cf. Chicago Ins. Co. v. Borsody*, 165 F.Supp.2d 592, 599 (S.D.N.Y. 2001) (40 days); *State v. Ludlow's Sanitary Landfill Inc.*, 50 F. Supp.2d 135, 140 (N.D.N.Y. 1999) (6 months).

Here, Lockheed did not "immediately" forward the *Henderson* complaint to Continental, as required. Lockheed was served with the *Henderson* First Amended Complaint on July 20, 2021 (Ex. 10, ¶ 7, J.R.523), but did not notify Continental until August 18, 2022—approximately **13 months** later, ECF 63, ¶ 43. Lockheed also failed to provide notice of occurrence "as soon as practicable." Under New York law, this obligation arises when circumstances known to an insured would suggest "to a reasonable person the possibility of a claim." *Olin Corp. v. Ins. Co. of N. Am.*,

27

966 F.2d 718, 723 (2d Cir. 1992) (citation omitted). Here, this notice condition was triggered at least by 2020—**more than 18 months before Lockheed's notice to Continental—**when Lockheed was first sued with respect to its Facility's discharge of hazardous substances. *Id.* at 724 (one suit reasonably suggested possibility of other claims, triggering notice-of-occurrence condition); ECF 63 ¶ 40 (alleging Lockheed has faced numerous suits "since 2020").

Lockheed's doubly untimely notice bars coverage for *Henderson* under the 1963-1971 Policies, including for the four claimants alleging exposure during those policy years. (And as discussed, these claimants' claims are barred under the 1971-1977 Policies by those Policies' Pollution Exclusion, and two of the four seek medical monitoring, which is not covered).

## V.    Lockheed's Statutory Failure to Act in Good Faith Claim Must Be Dismissed

### A.    Count 3 Should Be Dismissed for Lack of Subject-Matter Jurisdiction

A party may assert a statutory claim for failure to act in good faith only after exhausting administrative remedies by filing a complaint with, and receiving a final decision from, the Maryland Insurance Administration ("MIA"). Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c); Md. Code. Ann. Ins. § 27-1001(c)-(g). This exhaustion requirement is an element of a § 3-1701 claim, ***and*** a "jurisdictional prerequisite" for presenting it in a Maryland court. *Jackson v. Standard Fire Ins. Co*., No. 17-CV-1612-TDC, 2018 WL 348148, at *3 (D. Md. Jan. 9, 2018). A court, thus, lacks subject matter jurisdiction where, like here, a plaintiff fails to exhaust administrative remedies. *McLelland v. Travelers Personal Ins. Co.*, No. 1:24-cv-01509-JRR, 2024 WL 4644620, at *3 (D.Md. Oct. 30, 2024) (dismissing § 3-1701 claim for lack of subject matter jurisdiction); *Unitrin Auto & Home Ins. Co. v. Karp*, 481 F. Supp. 3d 514, 527 (D. Md. 2020) (same).

Lockheed does not allege it has received a final decision from the MIA. Instead, it baldly claims it is exempt from the exhaustion requirement under § 3-1701(c)(2)(iii). ECF 63 ¶ 67. But the claimed exception applies only to actions "[u]nder a commercial insurance policy on a claim

with respect to which the applicable limit of liability exceeds \$1,000,000." Md. Code, Cts. & Jud. Proc. § 3-1701(c)(2)(iii).[16]   Lockheed fails to allege facts supporting its legal conclusion that it is "exempt" from exhaustion, because while it asserts that the "Policies provide \$500,000 to \$1,000,000 per year in the aggregate" (ECF 63, ¶ 14), it does not allege any Policy's applicable limit of liability "exceeds \$1,000,000." Lockheed's conclusory "exhaustion exemption" assertion not only lacks factual support, but also is contradicted by the relevant Policies (*e.g.,* ECF 1-9 at 3), and thus does not establish subject matter jurisdiction. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Pa. Nat'l Mut. Cas. Ins. Co. v. Tate Andale, Inc.*, No. ADC-17-0670, 2018 WL 1881276, at *5 (D. Md. Apr. 19, 2018)  (no subject matter jurisdiction in light of "conclusory allegations").

## B.    Count 3 Also Fails as a Matter of Law Under Rule 12(b)(6)

Even if Lockheed could establish subject-matter jurisdiction, Count 3 fails under Rule 12(b)(6).  First, § 3-1701 applies only to "casualty insurance policies … issued, sold, or delivered in" Maryland.  Md. Code Ann., Cts. & Jud. Proc. § 3-1701(b).  The 1963-1977 Policies—the only Policies actually at issue here—were sold by Continental, headquartered in Illinois, and upon issuance were delivered to Lockheed in New York.  ECF 36-1 ¶ 6; ECF 1-10 at 6.  Count 3, thus, fails as to these five Policies.  Second, Count 3 must be dismissed because Continental does not owe coverage under the Policies.  Without coverage, § 3-1701 claims fail as a matter of law.  *See, e.g., St. Paul Mercury,* 819 F.3d at 739; Md. Code, Cts. & Jud. Proc. § 3-1701(e) (factfinder must find "in favor of the insured" and that insurer failed to act in good faith).

## VI.    Lockheed's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 4) Fails as a Matter of Law

Lockheed's claim for breach of the implied covenant of good faith and fair dealing, ECF

---

[16] Lockheed does not (and cannot) allege another exception applies.  Md. Code, Cts. & Jud. Proc. § 3-1701(c)(2)(i)-(ii) (exceptions for small claims and where exhaustion waived by agreement).

63 ¶¶ 70-75, also fails as a matter of law because, "no independent cause of action at law exists in Maryland for breach of the implied duty of good faith and fair dealing." *Mount Vernon Props., LLC v. Branch Banking & Tr. Co.,* 170 Md. App. 457, 472 (2006); *see also Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp.3d 480, 493 (D. Md. 2022) (dismissing alleged claim).

New York also "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Thus, in New York, a breach of the implied covenant claim is dismissed as duplicative where the conduct allegedly violating the implied covenant is also the predicate for alleged breach of contract. *Polcom USA, LLC v. Affiliated FM Ins. Co.,* 551 F.Supp.3d 290, 297 (S.D.N.Y. 2021). Here, Lockheed's bad faith claim is premised on Continental's alleged failure to investigate Lockheed's claims and its denial of coverage, as is its breach of contract claim. ECF 63 ¶¶ 58-59, 72-73. As such, Count 4 must be dismissed. *Polcom¸* 551 F.Supp.3d at 298 (dismissing covenant of good faith claim as duplicative); *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014); *Brown v. Erie Ins. Co.*, 207 A.D.3d 114, 1145-46 (N.Y. App. Div. 2022).

VII.    **Lockheed's Claim for Attorneys' Fees (Count 5) Fails as a Matter of Law**

Since the Policies do not provide coverage, Lockheed's claim for attorneys' fees in this and the SDNY Action fails. *Mesmer v. Md. Auto Ins. Fund*, 353 Md. 241, 264 (1999); *Mighty Midgets v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979). Dismissal is also required since attorneys' fees (where proper) are *damages*, not an independent cause of action. *Mesmer*, 353 Md. at 264; *Pier 59 Studios L.P. v. Chelsea Piers L.P.*, 811 N.Y.S.2d 24, 25 (App. Div. 2006).

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should grant this Motion, and dismiss Lockheed's Amended Complaint with prejudice.

Dated:  April 18, 2025

Respectfully submitted,

_____
Harry Lee
Bar No. 05232
Catherine D. Cockerham (admitted *pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 429-8112
Fax: (202) 429-3902
hlee@steptoe.com
ccockerham@steptoe.com

-and-

Eileen McCabe (admitted *pro hac vice*)
MENDES & MOUNT LLP
750 Seventh Ave.
New York, NY 10019
Tel: (212) 261-8000
Fax: (212) 261-8750
Eileen.mccabe@mendes.com

*Counsel for Defendant*
*Continental Casualty Company*

31